IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **SARNOVA HC, LLC**<br>5000 Tuttle Crossing Blvd.<br>Dublin, OH  43016,<br><br>          Plaintiff,<br><br>     and<br><br>**BOUND TREE MEDICAL, LLC**<br>5000 Tuttle Crossing Blvd.<br>Dublin, OH  43016,<br><br>          Plaintiff,<br>     v.<br><br>**JOSEPH HEALY**<br>17 Himelfarb Street<br>Millis, MA 02054<br>          ,<br>          Defendant. | Case No. 2:22-CV-2905<br><br>Judge _____ |

## COMPLAINT

For its Complaint against Defendant Joseph Healy ("Healy"), Plaintiffs Sarnova HC, LLC ("Sarnova") and Bound Tree Medical, LLC ("BTM") hereby states as follows:

## THE PARTIES

1.      Plaintiff Sarnova is a Delaware Limited Liability Company, with its principal place of business in Franklin County, Ohio.  The sole member of Sarnova is Sarnova, Inc., which is a Delaware corporation having a principal place of business in Franklin County, Ohio.  Accordingly, Sarnova is a citizen of Ohio and Delaware.

2. BTM is an Ohio Limited Liability Company, with its principal place of business in Franklin County, Ohio. BTM's sole member is BEMS Holdings, LLC, which is organized under the laws of Delaware and has at its sole member Sarnova HC, LLC. Accordingly, BTM is also a citizen of Ohio and Delaware. BTM is an affiliate of Sarnova.

3. Through its member interests, Sarnova is the ultimate parent company of BTM and was the employer of the Defendant. Sarnova and BTM are collectively referred to herein as the "Company."

4. BTM is a national distributor of prehospital emergency medical supplies, equipment, and pharmaceutical for EMS providers, including First Responders, EMTs and Paramedics.

5. Defendant Healy is an individual who, upon information and belief, resides in Millis, Massachusetts.

**JURISDICTION**

6. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy in this action, exclusive of interest, exceeds $75,000.00. The Plaintiffs are citizens of Ohio and Delaware, and the Defendant is domiciled in and a citizen of Massachusetts.

7. This Court has personal jurisdiction over the Defendant, because he was employed by a company whose principal place of business is in Ohio; he attended training in Ohio relating to his employment; he corresponded and communicated with other Company employees in Ohio in furtherance of his job responsibilities; he attended meetings in Ohio related to his job responsibilities; he contractually agreed to resolve any disputes with the Company in Ohio and this judicial district; the Company has suffered damages in Ohio as a result of Defendant's conduct; and the Defendant

would reasonably expect that he could be sued in Ohio for conduct in breach of his Non-Competition, Non-Solicitation, and Confidentiality Agreement.

**VENUE**

8. Venue is proper in this Court under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claim occurred in the Southern District of Ohio, including: (a) that Defendant's conduct that gives rise to the Company's claims for relief relates to Defendant's employment with Sarnova, his employment activities on behalf of Sarnova and BTM, and Sarnova and BTM are located in Franklin County, Ohio. Further, Defendant is a party to a Non-Competition, Non-Solicitation, and Confidentiality Agreement with Sarnova (copy attached hereto as Exhibit 1) that provides: "Each party irrevocably agrees that any legal action, suit or proceedings brought by it in any way arising out of this Agreement must be brought solely and exclusively in, and will be subject to the service of process and other applicable procedural rules of, the State or Federal courts in Columbus, Ohio and hereby waives any objections or defenses relating to jurisdiction or venue with respect to any action or proceeding initiated in such courts."

**ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

9. For many years, the Company has continuously developed and maintained its business reputation and clientele in the business of selling and distributing healthcare products to emergency responders (including Police, fire and EMS), as well as other customers. The Company has established a valuable and substantial reputation, trade, clientele and patronage in such business. The Company's geographic market area includes the entire United States.

10. Defendant Healy was hired by Sarnova after he applied and was interviewed.

11. Defendant Healy's dates of employment with Sarnova were from July 31, 2016, to March 02, 2022.

12. At the time of Defendant's resignation of employment with Sarnova, he was an Account Manager for BTM assigned to a region that included Western Massachusetts and Connecticut. In this role, Defendant served as a primary contact with BTM's customers. As its employee, BTM provided Defendant with in-house training, client/customer leads and referrals, business strategies and advice, expense reimbursement, product and pricing information, and other resources to create and solidify BTM customer/client relationships.

13. Sarnova and the Defendant entered into a Non-Competition, Non-Solicitation, and Confidentiality Agreement on or about July 1, 2016 ("Non-Competition Agreement"). A copy of the Non-Competition Agreement is attached hereto as Exhibit 1. The terms of that agreement provide, among other things:

> **SECTION 1: NON-COMPETITION AND NON-SOLICITATION.** During the Employee's employment by the Company, and for a period of 12-consecutive months immediately thereafter (the "Non-Compete Term"), the Employee shall not, directly or indirectly, engage, participate, or invest, as owner, part-owner, shareholder, partner, member, manager, director, officer, trustee, employee, agent, consultant, independent contractor in any other capacity, in any Competitive Business or engage in any Solicitation Activities. * * * As used herein, the term "Competitive Business" shall include any (i) sole proprietorship, corporation, partnership, limited liability company, joint venture or any other business entity which is then engaged, or proposes to engage, in the same or similar business activity as that of Company and/or any of its Affiliates within the same geographic area in the United States as where Company and/or any of its Affiliates conducts business; * * * As used herein, the term "Solicitation Activities" shall include * * * *(iii) diverting or attempting to divert, encouraging and/or inducing any agent, client, customer, supplier, vendor, and/or manufacturer to terminate its relationship with the Company or an Affiliate, (iv) soliciting for or on behalf of any entity or person any client and/or customer of the Company or Affiliate (v) selling, marketing, promoting, and/or providing to any customer or client of Company and/or an Affiliate any identical, similar, or competing product that is being sold, marketed, promoted or offered by Company or an Affiliate.

(Non-Competition Agreement at Section 1, Exhibit 1 hereto.)

14. Defendant's Non-Competition Agreement includes his agreement, during his employment with BTM and for a period of one year after such employment ends, not to work as an employee for a competing person or entity and not to solicit, sell, market, or provide to any of Plaintiffs' customers any similar or competing product to those sold, marketed, or offered by Plaintiffs.  The Non-Competition Agreement further provides that violation or a breach of any terms or provisions in such Agreement by Defendant entitles the Company to injunctive relief, including specific performance and other equitable relief.  In this regard, Section 4 of Defendant's Non-Competition Agreement provides:

> The parties hereto agree that any breach by the Employee of any provision of this Agreement will cause irreparable damage to the Company and no adequate remedy may exist at law for the Company in the event of a breach hereof by the Employee.  In the event of such breach, the Company shall have, in addition to any and all remedies of law, the right to an injunction, specific performance or other equitable relief.

(Non-Competition Agreement at Section 4, Exhibit 1 hereto.)

15. Section 9 of Defendant's Non-Competition Agreement provides:

> Employee recognizes and acknowledges that he/she may, from time to time, be assigned and/or directed to work for an Affiliate and that the corporate ownership for such Affiliate may not be the same as Company's.  Employee expressly consents to be bound by the provisions of this Agreement for the benefit of the Company or any such Affiliate to whose employ the Employee may be transferred without the necessity that this Agreement be re-signed at the time of such transfer.  Employee agrees that the covenants and agreement on the part of the Employee contained herein are specifically intended to inure to the benefit of such Affiliate.  Company and Employee agree this Agreement shall apply to and bind the Employee for any Affiliate he/she is assigned to and/or directed to work for and likewise apply to and operate for the protection of any and all such Affiliates.

(Non-Competition Agreement at Section 1, Exhibit 1 hereto.)  Defendant, who was employed by Sarnova, was assigned and/or directed to perform work for BTM, an affiliate of Sarnova.

5

16. Pursuant to the terms of the Non-Competition Agreement, Defendant's employment with Sarnova was at will, and it could therefore be terminated by either Sarnova or Defendant, for any reason, at any time. (*See* Exhibit 1 hereto at Section 3.)

17. Henry Schein Medical's EMS division is a national distributor of prehospital emergency medical supplies, equipment, and pharmaceutical for EMS providers, including First Responders, EMTs and Paramedics. Upon information and belief, Henry Schein Medical's EMS division distributes the foregoing supplies and equipment throughout the United States.

18. On March 2, 2022 Defendant was terminated for cause.

19. The Company recently discovered that Defendant is working as a Field Sales Consultant for Henry Schein Medical in its EMS division, assigned to the New England territory.

20. Upon information and belief, Defendant's New England territory for Henry Schein encompasses the territory where he served as an Account Manager for the Company.

21. Defendant's employment with Henry Schein constitutes employment with a "Competitive Business" as that term is defined in Section 1 of the Defendant's Non-Competition Agreement and constitutes a violation of the restrictions in such Agreement.

22. While employed by Sarnova and serving as an Account Manager for BTM, Defendant received and had access to confidential, proprietary and trade secret information of the Company, including customer information, customer orders, marketing plans and strategies, pricing, employee information (including performance and productivity information). During his employment with Sarnova, Defendant obtained knowledge regarding the Company's business information that has not been the subject of public disclosure and that is information defined as a trade secret under the Ohio Uniform Trade Secrets Act.

23. Defendant's Non-Competition Agreement includes the following:

>**SECTION 2: CONFIDENTIAL INFORMATION.** The Employee shall not at any time, whether during or after the termination of the Employee's employment, disclose to any person or entity or use in any respect, any "Confidential Information" (as hereinafter defined) of which the Employee is or becomes aware, whether or not such information is developed by Employee, except to the extent that such disclosure or use is directly related to and required by the Employee's performance of duties assigned to the Employee by the Company.  * * *  For purposes of this Agreement, "Confidential Information" shall mean information that is not generally known to the public and that is used, developed or obtained by the in connection with its business, including but not limited to, (i) products or services, (ii) fees, costs and pricing structures, (iii) designs, analysis, flow charts, drawings, research and reports, (iv) inventions, improvements, devices, new developments, methods and processes, whether patentable or non-patentable and whether or not reduced to practice, (vii) customers and clients and customer and client lists, (viii) copyrightable works, (ix) all technology, know-how, techniques, data and trade secrets and (x) all similar and related information in whatever form.

(Non-Competition Agreement at Section 2, Exhibit 1 hereto.)

24. Unless Defendant is enjoined from violating the terms of his Non-Competition Agreement, the Company will be irreparably harmed by the continuing and inevitable use of its business training, confidential customer, employee and business information and knowledge, the loss of customers and customer relationships, the loss of goodwill, the loss of reputation, and other present and future economic loss.

25. The Company has already suffered and will continue to suffer irreparable injury and harm to its business, and monetary damages are both difficult to calculate and are inadequate to address continuing injury that severs relationships and creates an impact far into the future.

## COUNT ONE - BREACH OF NON-COMPETITION AGREEMENT

26. Plaintiffs reallege herein the allegations contained in each of the preceding paragraphs.

27. Plaintiffs have performed all preconditions necessary to the enforcement of Defendant's Non-Competition Agreement.

28. As an at-will employee, Defendant's prospective and/or ongoing employment with Sarnova provided the required consideration for Defendant's Non-Competition Agreement.

29. Defendant Healy violated the express terms of his Non-Competition Agreement by becoming an employee of Henry Schein Medical in its EMS division and New England region, a "Competing Business" as that term is defined in the Non-Competition Agreement, and Defendant's employment with Henry Schein constitutes a violation of the non-competition restrictions in Section 1 of the Non-Competition Agreement.

30. As a direct and proximate result of Defendant's breach of his Non-Competition Agreement, Plaintiffs have suffered substantial harm, injury and damage.

## COUNT TWO - INJUNCTIVE RELIEF

31. Plaintiffs reallege herein the allegations contained in each of the preceding paragraphs.

32. Defendant Healy is continuing to work for a Competitive Business in violation of the terms of Defendant's Non-Competition Agreement.

33. Unless Defendant is enjoined from working for Henry Schein (or any other business that competes with Plaintiffs) in violation of his Non-Competition Agreement, Plaintiffs will be irreparably harmed by, among other things, the misappropriation of their business training, customers, customer relationships, and confidential information and trade secrets.

34. Plaintiffs have already suffered and will continue to suffer immediate and irreparable injury and harm to their businesses, and because of the continuing nature of the harm and the difficulty in measuring such harm, monetary damages are an inadequate redress for such continuing injury.

35. The continuing nature of the violation and difficulty in measuring damages, leave Plaintiffs with no adequate remedy at law and entitle Plaintiffs to injunctive relief.

WHEREFORE, Plaintiffs demand judgment as follows:

(1) A preliminary and permanent injunction enjoining Defendant Healy from violating the terms of his Non-Competition Agreement, including preventing Defendant from:

    a. Disclosing or using any confidential, proprietary and/or trade secret information of Sarnova and/or BTM for any reason or purpose whatsoever;

    b. For a period of one year after the date of the Court's Order, directly or indirectly:

        i. Diverting or attempting to divert, encouraging and/or inducing any client, customer, supplier, vendor or manufacturer to terminate its relationship with Sarnova or BTM;

        ii. Soliciting any client or customer of Sarnova or BTM on behalf of any person or entity;

        iii. Selling, marketing, promoting, and/or providing to any customer or client of Sarnova or BTM any identical, similar, or competing product that is being sold, marketed, promoted or offered by Sarnova or BTM;

        iv. Engaging, participating, or investing, as owner, part-owner, shareholder, partner, member, manager, director, officer, trustee, employee, agent, consultant, independent contractor or in any other capacity in any business which is then engaged, or proposes to engage, in the same or similar business activity as that of Sarnova or BTM within the United States;

        v. Hiring or attempting to for or on behalf of any entity or person, any officer or other employee of Sarnova or BTM, or authorizing or approving any such action by any other person;

        vi. Encouraging and/or inducing any officer or other employee of Sarnova or BTM to end his or her employment with Sarnova or BTM;

        vii. Being employed by Henry Schein Medical in its EMS division.

(2) Compensatory and consequential damages in an amount to be determined at trial;

(3) Disgorgement of all compensation, commissions or other income received by the Defendant for conduct in violation of his Non-Competition Agreement;

(4) An award of costs and expenses incurred herein; and,

(5) Such other and further equitable relief as may be proper.

Respectfully submitted,

*/s/ Robert G. Cohen*

| | |
|---|---|
| Robert G. Cohen | (0041707) |
| Loriann E. Fuhrer | (0068037) |
| Matthew M. Zofchak | (0096279) |

KEGLER, BROWN, HILL & RITTER CO., L.P.A.
65 East State Street, Suite 1800
Columbus, OH  43215
Telephone:  (614) 462-5400
Telecopier:  (614) 464-2634
Email:  rcohen@keglerbrown.com
           lfuhrer@keglerbrown.com
           mzofchak@keglerbrown.com

*Attorneys for Plaintiffs Sarnova HC, LLC*
*And Bound Tree Medical, LLC*